IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LULULEMON ATHLETICA CANADA INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 20-cv-07345 <br><br> **Judge John Robert Blakey** <br><br> **Magistrate Judge M. David Weisman** |

**Declaration of Ms. Perveen Atwal**

## DECLARATION OF PERVEEN ATWAL

I, Perveen Atwal, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am the Brand Protection Manager for Lululemon Athletica Canada Inc., Vancouver, British Columbia, Canada ("Lululemon"). I am knowledgeable of or have access to business records concerning all information referenced herein, including, but not limited to, Lululemon's trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, media coverage, and international operations. I am intimately familiar with Lululemon products and services, and with identifying counterfeits thereof. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Lululemon is a yoga-inspired athletic apparel company founded in Vancouver, British Columbia, Canada (where it continues to be based) in 1998 by Dennis "Chip" Wilson that creates unique athletic apparel and accessories. Lululemon sells many high-quality products, including, but not limited to, clothing and apparel such as shirts, jackets, sweat pants, yoga pants, tank tops, sweatshirts, sports bras, shorts, caps and headbands, as well as products other than clothing such as yoga mats, bags, and accessories, and also provides branded retail store services, including over the Internet, to carefully control customer experiences and further enhance the appeal of the Lululemon brand (these and other genuine Lululemon branded products are collectively referred to herein as the "Lululemon Products"). While Lululemon has its roots in yoga, Lululemon Products are

increasingly used for other athletic and casual lifestyle pursuits, such as running and general fitness. Lululemon works with local athletes and fitness practitioners to enhance Lululemon brand awareness. Lululemon Products are designed to offer performance, fit and comfort while incorporating both function and style. Lululemon's heritage of combining performance and style distinctly positions Lululemon to address the needs of athletes, as well as a growing core of consumers who desire everyday casual wear that is consistent with their active lifestyles.

4. Since its founding in 1998, the unique and highly desirable Lululemon Products have led to enormous growth and financial success for Lululemon. In 2016, Lululemon reported revenue of $2.34 Billion and over $300 Million in net income. The company went public on the NASDAQ stock exchange in 2007, and Lululemon's current market capitalization exceeds $8 Billion. The root of this financial success lies in Lululemon's ability to consistently deliver highly desirable Lululemon Products.

5. Lululemon Products have become enormously popular and even iconic, driven by Lululemon's arduous quality standards and innovative design. Among the purchasing public, genuine Lululemon Products are instantly recognizable as such. In the United States and around the world, the Lululemon brand has come to symbolize high quality, and Lululemon Products are among the most recognizable athletic apparel in the world.

6. The prestige of the Lululemon brand is further enhanced by careful distribution of Lululemon Products using a vertical model in which Lululemon provides retail store services to operate its own Lululemon branded stores. Lululemon Products are sold exclusively through Lululemon's 351 distinctive retail stores, including nine in Chicago (one of which is located in the exclusive Michigan Avenue shopping district), as well as

through certified partners that offer Lululemon Products in premium yoga studios, gyms, and/or wellness centers. Lululemon's retail store services are provided through operation of these branded stores. Lululemon's vertical retail strategy allows Lululemon to interact more directly with its customers and to tightly control the consumer's retail experience.

7. Providing genuine Lululemon branded retail store services over the Internet to sell genuine Lululemon Products is an important part of Lululemon's business strategy. Since at least 2009, Lululemon has operated a website at lululemon.com where it provides retail store services and promotes and sells genuine Lululemon Products. Direct to consumer net revenue increased $51.8 million, or 13%, to $453.3 million in fiscal 2016 compared to fiscal 2015, primarily as a result of increased traffic on Lululemon's e-commerce websites. The lululemon.com website features proprietary content, images and designs exclusive to Lululemon. Attached hereto as **Exhibit 1** is a true and correct copy of a portion of the lululemon.com website.

8. Lululemon's cultural and community-based business approach has provided Lululemon with a competitive advantage that is responsible for the brand's strong financial performance. In the years 2004 – 2016, Lululemon's net revenue increased from $40 million annually to $2.34 billion, an extraordinary growth of over 3,000% during challenging economic times. Lululemon's growth and success have not gone unnoticed. The brand has earned numerous industry awards and accolades. As an example, Lululemon was named International Retailer of the Year by the National Retail Foundation in 2012. Attached hereto as **Exhibit 2** is a true and correct copy of the December 19, 2012, "2012 Award Winners" Press Release from the National Retail Federation.

9. Lululemon's trademarks are critical to its business. Lululemon is the owner of and has widely promoted several trademarks which have earned substantial fame and considerable goodwill among the public. Lululemon has used its trademarks (collectively or singularly, the "LULULEMON Trademarks") on and in association with its entire line of athletic apparel and accessories, as well as in connection with packaging, retail store services (including nine retail stores in Chicago), and online e-commerce. Lululemon Products always include at least one of the LULULEMON Trademarks. Often several LULULEMON Trademarks are displayed on a single Lululemon Product. Lululemon incorporates a variety of distinctive marks in its various Lululemon Products. Consequently, the United States Patent and Trademark Office has granted Lululemon multiple federal registrations for the LULULEMON Trademarks. Lululemon uses the LULULEMON Trademarks in connection with the marketing of its Lululemon Products. The LULULEMON Trademarks, including but not limited to the registered trademarks listed below, are famous and valuable assets of Lululemon.

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 4,391,115 | LULULEMON | Clothing, namely, t-shirts, shirts, tank tops, sweatshirts, sweaters, jerseys, jumpers, pants, sweatpants, shorts, skirts, dresses, jackets, coats, vests, underwear, socks, warm-up suits, bodysuits, leotards, tights, leggings, leg warmers; headwear, namely, hats, caps, toques, visors, headbands, bandanas; clothing accessories, namely, belts, scarves, shawls, shoulder wraps, arm warmers, mittens, gloves; sandals in class 025. |
| 3,990,179 | LULULEMON | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise |

| | | |
|---|---|---|
| | | and health living; online retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living in class 035. |
| 3,985,876 | LULULEMON ATHLETICA | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living in class 035. |
| 2,607,811 | lululemon athletica | Clothing, namely, pants, shirts, t-shirts, shorts, sweatshirts, sweatpants, socks, jackets, coats, hats in class 025. |
| 3,985,881 | lululemon athletica | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living in class 035. |
| 2,460,180 | [Omega logo] | Clothing, namely, pants, shirts, t-shirts, shorts, sweatshirts, sweatpants, socks, jackets, coats, hats in class 025. |
| 3,985,877 | [Omega logo] | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living; online retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living in class 035. |

| | | |
|---|---|---|
| 3,024,374 | LUON | Clothing, namely, T-shirts, shirts, pants, shorts, sweatshirts, sweatpants, tank tops, jackets, coats and hats for men, women and children in class 025. |
| 3,116,371 | SILVERESCENT | Clothing, namely T-shirts, shirts, pants, shorts, skirts, dresses, sweatshirts, sweatpants, tank tops, underwear, socks, jackets, coats, headwear, footwear in class 025. |
| 3,272,013 | VITASEA | Dresses; Pants; Shirts; Skirts; Sweat pants; Sweat shirts; T-shirts; Tank tops; Underwear in class 025. |
| 3,976,389 | LUXTREME | Body suits; Jackets; Leggings; Pants; Shirts; Shorts; Skirts; Tank tops; Tights in class 025. |
| 3,978,257 | GROOVE | Yoga pants in class 025. |
| 3,978,258 | GROOVE PANT | Yoga pants in class 025. |
| 4,033,939 | SET-MY-PONYTAIL-FREE | Clothing, namely, hooded sweatshirts, jackets and coats; Headwear, namely, hats and caps in class 025. |
| 4,214,049 | WUNDER UNDER | Clothing, namely crop pants, pants, shorts, tights, leggings in class 025. |
| 4,214,052 | POWER Y | Clothing, namely, tank tops, bras in class 025. |
| 4,219,265 | RULU | Clothing, namely, T-shirts, shirts, pants, shorts, sweatshirts, sweatpants, tank tops, underwear, socks, jackets, coats and hats for men, women and children in class 025. |
| 4,234,113 | DEFINE JACKET | Clothing, namely, jackets in class 025. |
| 4,333,759 | SCUBA | Clothing, namely, hooded sweatshirts, jackets, coats, tops in class 025. |
| 4,823,727 | LOCK 'EM DOWN | Clothing, namely, underwear in class 025. |
| 4,832,086 | NAKEDSEAM | Athletic apparel, namely, pants, shorts, crops, leggings, shirts, t-shirts, tank tops, jackets, and outerwear, namely, coats in class 025. |

| | | |
|---|---|---|
| 4,832,139 | CUFFINS | Clothing, namely, jackets, sweatshirts, shirts, sweaters in class 025. |
| 4,846,298 | LUXCHANGE | Apparel, namely, jackets, coats, parkas, and sweatshirts in class 025. |
| 4,905,437 | PACE BREAKER | Clothing, namely, shorts and underwear in class 025. |
| 4,964,908 | FULL-ON | Athletic apparel, namely, pants, shorts, crop pants, tights and leggings all for men, women and children; all of the foregoing expressly excluding cosmetics in class 025. |
| 5,040,370 | ALL THE RIGHT PLACES | Clothing, namely, crop pants, pants, shorts, tights, leggings in class 025. |
| 5,041,355 | BLOCK-IT POCKET | Clothing, namely, pants, sweatpants, shorts in class 025. |
| 5,413,086 | SWIFTLY | Clothing, namely, t-shirts, shirts, tank tops, sweatshirts, sweaters; clothing accessories, namely, arm warmers and scarves; headwear, namely, headbands in class 025. |
| 5,617,645 | TIGHT STUFF | Clothing, namely, pants, tights, and leggings in class 025. |
| 5,666,869 | NULU | Clothing, namely, shirts, tank tops, pants, sweatpants, shorts, dresses, jackets, bodysuits, leotards, tights, bras in class 025. |
| 4,897,183 | [design of hooded jacket] | Hooded sweat shirts; Jackets; Coats in class 025. |

| | | |
|---|---|---|
| 4,986,083 | | Clothing, namely, tights, pants in class 025. |
| 5,393,854 | | Clothing, namely, tights, pants, leggings in class 025. |
| 5,751,880 | SERIOUSLY LIGHT | Clothing, namely, t-shirts, shirts, tank tops and headbands in class 025. |

10. The above U.S. registrations for the LULULEMON Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The LULULEMON Trademarks have been used exclusively and continuously by Lululemon and its subsidiaries, some since at least as early as 1998, and have never been abandoned. Attached hereto as **Exhibit 3** are true and correct copies of the United States Registration Certificates for the LULULEMON Trademarks included in the above table.

11. The LULULEMON Trademarks are exclusive to Lululemon and are displayed extensively on Lululemon Products and in Lululemon's marketing and promotional materials.

12. Lululemon Products have long been among the most popular athletic and yoga apparel in the world and have been extensively promoted at great expense. In fact, Lululemon expends millions of dollars annually promoting and marketing the LULULEMON

Trademarks. Lululemon Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. Because of these and other factors, the Lululemon name and the LULULEMON Trademarks have become famous throughout the United States.

13. The LULULEMON Trademarks are distinctive when applied to the Lululemon Products, signifying to the purchaser that the products or services come from Lululemon and are consistent with Lululemon's quality standards. Whether Lululemon manufactures the products itself or licenses others to do so, Lululemon has ensured that products bearing the LULULEMON Trademarks are manufactured to the highest quality standards, and likewise ensures that the provision of retail store services under the LULULEMON Trademarks is consistent with the highest quality standards. The LULULEMON Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the LULULEMON Trademarks is of incalculable and inestimable value to Lululemon.

14. Lululemon's innovative marketing and product designs have enabled Lululemon to achieve widespread recognition and fame, and have made the LULULEMON Trademarks some of the most well-known marks in the athletic and yoga apparel industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Lululemon brand have made the LULULEMON Trademarks invaluable assets of Lululemon.

15. The success of the Lululemon brand has resulted in its significant counterfeiting. Consequently, Lululemon has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and

reported by consumers. In recent years, Lululemon has identified numerous fully interactive e-commerce stores, including those[1] operating under the seller aliases identified in Schedule A to the Complaint (collectively, the "Seller Aliases"), which were offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of the LULULEMON Trademarks (the "Counterfeit Lululemon Products") to consumers in this Judicial District and throughout the United States.

16. I perform, supervise, and/or direct investigations related to Internet-based infringement of the LULULEMON Trademarks. Our investigation shows that Defendants are using the Seller Aliases to sell Counterfeit Lululemon Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Counterfeit Lululemon Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Counterfeit Lululemon Products were offered for sale, other features commonly associated with e-commerce stores selling counterfeit products, and because Defendants and their e-commerce stores do not conduct business with Lululemon and do not have the right or authority to use the LULULEMON Trademarks for any reason. In addition, each e-commerce store offered shipping to the United States, including Illinois. Lululemon also conducted searches of the public WhoIs information regarding the Domain Names and identified the provided e-mail addresses for each domain. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces and Domain Names.

Aliases reviewed are attached as **Exhibit 4**, and WhoIs information for the Domain Names is attached as **Exhibit 5**.

17. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Lululemon Products to residents of Illinois.

18. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Lululemon has not licensed or authorized Defendants to use any of the LULULEMON Trademarks, and none of the Defendants are authorized retailers of genuine Lululemon Products.

19. Many Defendants also deceive unknowing consumers by using the LULULEMON Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Lululemon Products. Other e-commerce stores operating under the Seller Aliases omit using the LULULEMON Trademarks in the

item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Lululemon Products.

20. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

21. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Lululemon Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

22. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Lululemon Products for sale by the Seller Aliases bear similar irregularities and indicia of being

counterfeit to one another, suggesting that the Counterfeit Lululemon Products were manufactured by and come from a common source and that Defendants are interrelated.

23. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

24. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Lululemon's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Lululemon.

25. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Lululemon Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Lululemon, have jointly and severally, knowingly and willfully used and continue to use the LULULEMON Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Lululemon Products into the United States and Illinois over the Internet.

26. Monetary damages cannot adequately compensate Lululemon for ongoing infringement because monetary damages fail to address the loss of control of and damage to Lululemon's reputation and goodwill. Furthermore, monetary damages are difficult, if

not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Lululemon's reputation and goodwill by acts of infringement.

27. Lululemon's goodwill and reputation are irreparably damaged when the LULULEMON Trademarks are used in connection with the offering for sale or sale of goods or services not authorized, produced, or manufactured by Lululemon. Moreover, brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Lululemon's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

28. Lululemon is further irreparably harmed by the unauthorized use of the LULULEMON Trademarks because counterfeiters take away Lululemon's ability to control the nature and quality of the Counterfeit Lululemon Products. Loss of quality control over goods offered for sale or sold under the LULULEMON Trademarks and, in turn, loss of control over Lululemon's reputation, is neither calculable nor precisely compensable.

29. The use of the LULULEMON Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Lululemon is likely causing and will continue to cause consumer confusion, which weakens Lululemon's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit Lululemon Products he or she has purchased originated from Lululemon will come to believe that Lululemon offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Lululemon Products, resulting in a loss or undermining of Lululemon's reputation and goodwill. Indeed, there is damage to Lululemon's reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit. Prospective consumers who

see inferior Counterfeit Lululemon Products worn by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Lululemon and the LULULEMON Trademarks. Such post-sale confusion results in damage to Lululemon's reputation and correlates to a loss of unquantifiable future sales.

30. Lululemon is further irreparably damaged due to a loss of exclusivity. Lululemon's athletic and yoga apparel, accessories and other products are meant to be exclusive. Lululemon's extensive marketing efforts and innovative apparel designs are aimed at growing and sustaining sales. The LULULEMON Trademarks are distinctive and signify to consumers that the products originate from Lululemon and are manufactured to Lululemon's high quality standards. When counterfeiters use the LULULEMON Trademarks to offer for sale or sell goods or services without Lululemon's authorization, the exclusivity of Lululemon's products and services, as well as Lululemon's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

31. Lululemon will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 11th day of December 2020 at Vancouver, British Columbia, Canada.

_____
Perveen Atwal